IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2007

## EDWARD RAY ARMSTRONG v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C05-341      Lee Moore, Judge**

_____

**No. W2007-00703-CCA-R3-PC  - Filed November 19, 2007**

_____

The Petitioner, Edward Ray Armstrong, appeals as of right from the judgment of the Dyer County Circuit Court denying post-conviction relief.  In 2006, the Petitioner pled guilty as a Range I, standard offender to theft of property valued at $1000 or more but less than $10,000, a Class D felony.  Following a sentencing hearing, the trial court imposed a three-year sentence.  On appeal, the Petitioner argues that he received the ineffective assistance of counsel due to trial counsel's failure to subpoena his medical records and to adequately prepare for trial.  After a review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Timothy Boxx, Assistant Public Defender, Dyersburg, Tennessee, for the appellant, Edward Ray Armstrong.

Robert E. Cooper, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**Factual Background**

   On October 10, 2005, a Dyer County grand jury indicted the Petitioner for theft of property valued at $1,000 or more but less than $10,000, a Class D felony.  See Tenn. Code Ann. §§ 39-14-103, -105.  Thereafter, the State provided notice seeking to classify the Petitioner as a Range II, multiple offender.  On February 9, 2006, the morning of trial, the Petitioner pled guilty as charged to theft but as a Range I, standard offender.  All other sentencing issues were reserved for the trial court's determination.  Following a sentencing hearing, the trial court ordered the Petitioner to serve

three years in the Department of Correction and ordered this sentence to be served consecutively to a prior seven-year sentence.[1]

At the guilty plea hearing, the State provided the following facts as the basis for the Petitioner's plea:

> Mr. Dalton Johnson who owns Johnson Motor Company on St. John Avenue discovered on or about July 6 or July 7 of 2005 the 1989 GMC Sierra pickup was missing from his lot . . . . There would also be testimony from Jessie Stone, the co-defendant in the case, who is a half-brother of [the Petitioner's], that on the night of July 6, 2005 he dropped [the Petitioner] off at the Sonic Drive-In, which is across the street from Mr. Johnson's business, . . . thinking that [the Petitioner] was going there to see a young lady. Mr. Stone will testify that he then went to Halls. When he came back to his home on Wheeler Street from Halls [the Petitioner] was there with a 1989 GMC Sierra pickup that was put in a garage by Mr. Stone's house.
>
> There would also be testimony from Mr. Brent McNeely, also known as Bubbie McNeely, that [the Petitioner] came to him, offered him a hundred dollars for him to assist to remove a motor and transmission from a vehicle on Wheeler Street. Mr. McNeely will state that he did help to remove that motor and transmission, placed them in the back of a truck, received only twenty-five dollars rather than one hundred dollars.
>
> There'd be testimony from Harry Bevis that some time later on in July or August that Mr. Bevis did purchase some parts from [the Petitioner]. Those parts were discovered to have come from the truck that belonged to Mr. Johnson.
>
> There would also be testimony from Claude Simmons that he was next door to Mr. Bevis' shop, that [the Petitioner] also had some additional parts for sale, that Mr. Simmons set up a sale of those parts to Mr. Carl Ellison, that those parts were obtained from [the Petitioner]. Those parts were also recovered and identified as coming from Mr. Johnson's truck.
>
> There would also be testimony from David Richardson that he purchased a motor and transmission from [the Petitioner]. Those also were recovered and identifying numbers identified that they were from Mr. Johnson's truck. Mr. Danny Wilson of the Tennessee Highway Patrol CID Division was able to find the numbers on these parts and verify that they were from that truck that belonged to Mr. Johnson.

---

[1] The Petitioner was serving a seven-year sentence on unsupervised probation. He agreed at the guilty plea hearing that he had violated the conditions of his probation and consented to revocation.

Also, there'd be testimony from a Mr. Ralph McCutchen, Jr. that he observed a vehicle belonging to [the Petitioner's] father go by his home one night toward the Obion River. It was a truck; had a cab of a truck and some other parts in the back of it. When the truck came back those—a short time later, those parts were not in the truck. Officers then went to the Obion River and were able to recover the cab of the truck and some other parts from Mr. Johnson's truck from the Obion River . . . .

On April 11, 2006, the Petitioner filed a pro se petition for post-conviction relief, stating general allegations in support of his claim: ineffective assistance of counsel; "overwhelming evidence proving [his] innocence;" his plea was involuntary; and the prosecution failed to disclose favorable evidence. Counsel was appointed to represent the Petitioner. Thereafter, counsel moved to withdraw because the Petitioner alleged that counsel had "disclosed confidential information to third parties without the consent of the Petitioner." The trial court granted counsel's request to withdraw, and the Petitioner apparently expressed a desire to proceed pro se.

The Petitioner then filed a pro se "Amended Motion for Relief from Judgment," stating that "[h]e [was] not seeking a new trial, but instead asking for relief from judgment on Case No. C05-341, which [was] a three (3) year sentence for theft of property." As grounds for relief, he alleged "that effective representation was not available because a discovery [sic] was never provided to him after several requests." The remainder of the pleading was devoted to arguing that his effective ten-year sentence was excessive because of his young age and drug problems and asking the court to order his sentences to be served concurrently rather than consecutively.

An evidentiary hearing was held on September 1, 2006. At the beginning of the hearing, the Petitioner changed his mind about proceeding pro se and allowed his counsel, who was assisting as "elbow" counsel, to examine the witnesses.

The Petitioner testified that he expected trial counsel to obtain his medical records and cellular telephone records and that trial counsel failed to do so. When asked how his medical records were important to his defense, the Petitioner responded, "Because it would prove where I was the night the truck was stolen." According to the Petitioner, his cellular telephone records were also important because he placed a call while at the emergency room and the records would have shown he was present at the hospital with his girlfriend. He stated that he and his girlfriend were "at the emergency room till around two o'clock that morning . . . ." The Petitioner claimed that he knew "what time the truck was stolen" and that these records would have shown he was in the emergency room, proving that there was no way he could have stolen the truck. The Petitioner stated that he had to retrieve these records himself and that he gave them to trial counsel, who then stated that the records "didn't matter."

The Petitioner testified that trial counsel "never once called" him and that they only met "[t]hree or four times" for a "[f]ew minutes at a time." When asked about his conversations with trial counsel, the Petitioner stated that they "mostly . . . talked about . . . [him] not . . . cooperating with the police." The Petitioner claimed that trial counsel was supposed to set up a meeting with

-3-

Officer Jim Joyner of the Dyersburg Police Department and that he failed to do so. When asked what this meeting would have accomplished, the Petitioner responded, "I didn't even get to sit down and ever tell my side of the story of what really took place, and—because they had already charged me because I wouldn't cooperate with them." The Petitioner also testified that he "didn't know nothing [sic] of what was going on until [his] trial date[,]" that he tried phoning trial counsel from the county jail, that trial counsel would not accept his phone calls, and that trial counsel's secretary said the Petitioner "was harassing."

The Petitioner protested his innocence despite his guilty plea. According to the Petitioner, on the afternoon before trial, trial counsel stated to him that, if the Petitioner were to go to trial, he would receive fifteen years. Trial counsel also directed the Petitioner to come to his office in the morning to discuss the case further. When the Petitioner arrived the next morning, trial counsel "grabbed his jacket up," and the pair came "straight over" to the courthouse, "never discuss[ing] nothing [sic] else."

The Petitioner claimed that trial counsel "was prejudice [sic] towards" him due to trial counsel's representation of a co-defendant "in a previous charge . . . ." According to the Petitioner, he informed trial counsel that he "had problems with" counsel representing him, but counsel stated to him that "the judge probably wouldn't give [him] another attorney."

When asked if there was anything else he would have liked for trial counsel to have done, the Petitioner claimed that trial counsel informed the Petitioner's girlfriend that the district attorney general "hated [his] guts" and that trial counsel then stated he would not proceed to trial against the district attorney general. According to the Petitioner, if he wanted to proceed to trial, he "didn't even have a trial attorney anyway . . . ." The Petitioner also explained that trial counsel "could've got Robert Currin's bank records," which "could've proved the story [he] was telling . . . ."

On cross-examination, the Petitioner admitted that, although he had the medical and cellular telephone records in his possession, he did not bring them to the hearing. The Petitioner acknowledged that several witnesses were prepared to testify against him if the theft charge had gone to trial.

When asked how Currin's bank statements would have helped in defense, the Petitioner explained that the bank statements would have shown Currin's account was overdrawn and that Currin "had to make some money to put into his account." The Petitioner claimed that it was Currin, not him, who stole the truck. The Petitioner admitted he was on a probated seven-year sentence at the time the truck was stolen.

The Petitioner agreed that, on the day before trial, he had discussed the charge against him and the possible sentence with trial counsel. He stated that trial counsel conveyed the State's offer of fifteen years to him. When asked if he remembered answering the judge's questions at the guilty plea hearing, the Petitioner stated that he remembered responding to the questions but that he "had questions[,]" that he "was asking [the trial judge] questions when the hearing was going on, and [that

-4-

the trial judge] wasn't even responding to [him]." Specifically, the Petitioner acknowledged that he responded affirmatively to the following questions: whether trial counsel answered all of his questions about the charge pending against him; whether trial counsel had "done everything that [the Petitioner] asked and expected him to do"; and whether the Petitioner was "satisfied completely" with trial counsel's representation. However, the Petitioner contended that he did not provide honest answers, stating, "I figured if I didn't go on and take the ten years, that I was going to go to trial and not have nothing [sic] to go to trial with, I was going to get the max anyway."

Finally, the Petitioner agreed that, while he qualified as a Range II, multiple offender, he received a Range I sentence by pleading guilty. The Petitioner also acknowledged that the trial judge imposed all other aspects of his sentence.

Trial counsel testified that he examined the Petitioner's medical records and that the Petitioner had received treatment at the emergency room for a spider bite on the evening the truck was stolen. According to trial counsel, in order to have the records admitted into evidence, the Petitioner would have been required to testify. Whether the jury believed the Petitioner's story would have been based on the Petitioner's credibility. Furthermore, trial counsel stated that he discussed the medical records with the Petitioner "several times." Regarding the Petitioner's cellular telephone records, trial counsel stated that he did not discuss those, as a "[c]ell phone [call] could be made from anywhere."

Trial counsel testified that he was prepared to go to trial and that he never told the Petitioner otherwise: "In fact, I was going to trial, and on the morning before the trial, on February the 8th, at 7:30 that morning, he called me. He said specifically, 'I have talked to several people, and it is [in] my best interest to enter a plea.'" When asked about his preparation for trial, trial counsel testified that he had "nineteen separate entries" concerning "talking with" or "dealing with" the Petitioner. Trial counsel also testified that he interviewed several of the State's witnesses, including Brent McNeely, Officer Jim Joyner, and Jessie Stone's attorney. Trial counsel denied ever telling the Petitioner that the district attorney general "hated his guts" but clarified that the language he used was that the district attorney general "had no sympathy for" the Petitioner.

According to trial counsel, he had no recollection of the Petitioner's drug problems "ever being an issue." The Petitioner told trial counsel that he was given pain medication at the hospital. Trial counsel explained that introduction of the Petitioner's medical records "didn't preclude him and make him not guilty. . . . [It] would just be his word against what his brother was going to say." Regarding the Petitioner's use of any pain medication, trial counsel opined that the jury could have "look[ed] at that several different ways" and stated that "there was no indication" the Petitioner was incapacitated at the time he stole the truck.

On cross-examination, trial counsel confirmed that the State had filed a notice for enhanced punishment based upon the Petitioner's prior criminal history and that this subject was part of the plea negotiations. Ultimately, the Petitioner received a Range I, standard offender sentence rather than a Range II, multiple offender sentence.

When asked what the purpose of Currin's bank statements would have been, trial counsel stated,

> I could not, for the life of me, figure out the relevancy of that, other than to show that this man would have stolen this truck and sold it to cover a shortage in his bank account. And how I could prove that that money was related to the shortage of the bank account, I don't know.

Trial counsel believed this defense theory to be "far-fetched." Trial counsel also referred to the police reports in this matter as "very detailed."

The Petitioner's girlfriend, Jane Ann Castlelaw, testified. She stated that, on the night the truck was stolen, she was with the Petitioner at the hospital, who was receiving treatment for a spider bite. She explained that they did not leave the hospital until 2 a.m. that morning. According to Ms. Castlelaw, after the Petitioner received pain medication at the hospital, she had to walk him to his truck and into the house. Ms. Castlelaw then put the Petitioner to bed.

On cross-examination, Ms. Castlelaw admitted that she did not know what happened after she put the Petitioner to bed. However, she protested that he was incapable of stealing the vehicle due to his medicated state.

After hearing the evidence presented, the post-conviction court denied relief and entered an order to that effect on September 11, 2006. This appeal followed.

**ANALYSIS**

On appeal, the Petitioner raises the single issue of whether he received the ineffective assistance of counsel and argues said ineffectiveness led to his involuntary, unknowing, and unintelligent plea. To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right

to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the petitioner's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The petitioner bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The petitioner's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. 52, 56,106 S.Ct. 366, 369 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970)). In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held, "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Alford, 400 U.S. at 31, 91 S.Ct. at 164. In the context of a guilty plea, to satisfy the prejudice component of Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A post-conviction court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the post-conviction court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a post-conviction court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was

prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

In this appeal, the Petitioner contends that the representation he received from his trial counsel was ineffective. The Petitioner's entire argument is recited as follows: "In the instant case, trial counsel was ineffective for failing to subpoena the Petitioner's medical records and for failing to properly prepare for trial which caused Petitioner to lose confidence in [c]ounsel's sincerity of providing the best defense and causing him to make an involuntary guilty plea."

Despite the assertions of ineffectiveness, the Petitioner's brief contains no references to the record or any authority or argument in support of these factual allegations. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). However, the State does not argue waiver of the Petitioner's issues on appeal.

Despite any potential waiver of the Petitioner's claim, we conclude that the Petitioner's allegations of ineffective assistance of counsel are without merit. At the conclusion of the hearing, the post-conviction court denied relief, stating that the Petitioner had failed to show the elements of ineffective assistance of counsel: "[T]he transcript of the guilty plea shows that he pled on the day of the trial, and he was obviously . . . pleading because, . . . if he were convicted, he would be sentenced as a Range II offender . . . ." In its order memorializing this decision, the post-conviction court's findings were summarized as follows:

> THE COURT after hearing statement of counsel and testimony of witnesses does find that this [P]etitioner did enter a guilty plea in this cause on the morning of trial with a jury awaiting empaneling [sic] and that at the time of his plea the State gave a detailed summary of the State's proof which was overwhelming. . . . This [Petitioner] was advised of his constitutional rights and as to the range of sentencing both as a Range I and Range II Offender. The [Petitioner] knowingly and voluntarily entered a guilty plea with judicial sentencing at a later date with the only agreement being that any sentence sought would be as a Range I rather than a Range II Offender. The [Petitioner] indicated at the time of his plea that his attorney . . . had answered all of the questions that he had about the charge pending against him and his plea, that his attorney had done everything that he had asked and expected him to do and that the [P]etitioner was satisfied completely with the way his attorney had represented him . . . .
>
> . . . The Petitioner has failed to carry his burden and has shown no prejudice.

The Petitioner contends that he received ineffective representation because his trial counsel was not adequately prepared for trial and failed to subpoena his medical records. Trial counsel testified that he met with Petitioner on multiple occasions to prepare for trial, noting "nineteen separate entries" where he dealt with the Petitioner. It is clear that trial counsel was in possession of the Petitioner's medical records, examined those records, and reviewed them with the Petitioner

"several times." Trial counsel had interviewed State's witnesses and was prepared to go to trial. Contrary to the testimony of the Petitioner, trial counsel testified that it was the Petitioner who wished to plead guilty and sought a plea agreement on the morning of trial. Regarding what the medical records might have proved, trial counsel testified that the records did not exonerate the Petitioner, that the Petitioner would have had to testify in order for the records to be introduced, and that the Petitioner's credibility would have been an issue. According to trial counsel, the Petitioner had no indication of drug problems.

The post-conviction court obviously accredited the testimony of trial counsel, largely in part due to the Petitioner's responses at his guilty plea hearing. The evidence does not preponderate against the findings of the post-conviction court in this regard. The testimony at the post-conviction hearing reveals that the lines of communication were open and used by both the Petitioner and his trial counsel, allowing the Petitioner to make well-informed decisions and assist in his defense. Moreover, the Petitioner did not provide his medical records at the post-conviction hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The guilty plea transcript reveals that the trial judge carefully reviewed the rights that the Petitioner was waiving and confirms that the Petitioner responded appropriately to questions.

Because of the testimony provided by the Petitioner at the post-conviction hearing related to his claim of innocence, we also take this opportunity to note that post-conviction proceedings cannot be used to litigate the sufficiency of the evidence. See Rodney Tipton v. State, No. E2001-00001-CCA-R3-PC, 2002 WL 1400058, at *13 (Tenn. Crim. App., Knoxville, June 28, 2002), perm. app. denied, (Tenn. Dec. 23, 2002). Moreover, this Court has previously determined that lack of a factual basis for a guilty plea is not a basis for post-conviction relief. See, e.g., Powers v. State, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996).

There was no proof presented that shared confidences were violated due to trial counsel's representation of a co-defendant "in a previous charge . . . ." The Petitioner's bare allegation of a conflict of interest at the post-conviction hearing is not enough to establish that his trial counsel "actively represented conflicting interests . . . ." Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980). He has not established the constitutional predicate for his claim of ineffective assistance based upon a conflict of interest. Id. at 350.

Finally, in his "Amended Motion for Relief from Judgment," the Petitioner states that he is actually requesting a reduction in his sentence rather than reversal of his conviction. A post-conviction petition is not the proper mechanism for reviewing sentencing claims. See Tenn. Code Ann. § 40-30-105.

In sum, the Petitioner has failed to prove by clear and convincing evidence that trial counsel's representation constituted deficient performance. Additionally, he has failed to show prejudice because he did not establish that, but for trial counsel's alleged errors, he would have proceeded to trial. The record fully supports the post-conviction court's findings that the Petitioner's guilty plea was knowing and voluntary.

**CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's denial of post-conviction relief. The Petitioner has failed to demonstrate ineffective assistance of counsel.

_____
DAVID H. WELLES, JUDGE